2015 IL App (1st) 132183

FIRST DIVISION
March 16, 2015

Nos. 1-13-2183 & 1-14-0381
(Consolidated)

| | | |
|---|---|---|
| WILLIS CAPITAL LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 07 CH 29207 |
| | ) | |
| BELVEDERE TRADING LLC, THOMAS | ) | |
| HUTCHINSON and OWEN O'NEILL, | ) | Honorable |
| | ) | Kathleen M. Pantle, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Willis Capital LLC (Willis), appeals the trial court's dismissal of its first amended petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2012)).   On appeal, Willis alleges that the trial court should have granted its section 2-1401 petition to "reopen a 2008 settlement agreement and judgment under which it sold its ownership interest in [d]efendant Belvedere Trading LLC (Belvedere)" because: (1) defendants fraudulently concealed information regarding the value of the business prior to the execution of the settlement agreement; (2) the written waiver of fiduciary duties contained in the settlement agreement is unenforceable; (3) the March 5, 2012, dismissal order by the Chicago Board Options Exchange (CBOE) had no preclusive effect on the petition; and

(4) the trial court should have held an evidentiary hearing on the petition. Willis also challenges the trial court's award of reasonable attorney fees to defendants. For the following reasons, we affirm the dismissal of the section 2-1401 petition. However, we reverse the trial court's award of attorney fees and costs to defendants.

¶ 2                                 JURISDICTION

¶ 3     The trial court granted defendants' motion to dismiss the petition on June 7, 2013. Willis filed a notice of appeal on July 5, 2013. Prior to Willis filing the notice of appeal, defendants filed a fee petition seeking fees and costs pursuant to the settlement agreement. On January 6, 2014, the trial court awarded defendants $172,391.75 in fees and costs. Willis filed a second notice of appeal from this order on January 31, 2014. This court consolidated the two appeals. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 304(b)(3) governing appeals from a judgment granting or denying relief on a section 2-1401 petition. Ill. S. Ct. R. 304(b)(3) (eff. Feb. 26, 2010).

¶ 4                                 BACKGROUND

¶ 5     Willis's owner, William Carlson, founded Belvedere in 2002, investing his life savings of $405,000 to start the company. Defendants O'Neill and Hutchinson subsequently joined Belvedere as partners, respectively investing $160,000 and $85,000, in initial capital. In 2007, Carlson experienced medical issues and O'Neill and Hutchinson took control of the company. However, they also began to deny Willis access to Belvedere's assets, opportunities, and benefits.

¶ 6     In May 2007, after efforts to resolve the dispute between the parties failed, Willis filed a request for arbitration with the CBOE pursuant to Belvedere's operating agreement. Willis alleged that it was "entitled to disassociate from Belvedere and have [its] membership interest

purchased at its fair value in accordance with 805 ILCS 180/35-60." On October 12, 2007, Willis filed a claim in court seeking dissolution of Belvedere. During this time, Willis asked defendants to obtain an appraisal of Belvedere but defendants refused. The trial court scheduled a hearing for March 14, 2008, and entered an order compelling arbitration.

¶ 7 On January 31, 2008, O'Neill and Hutchinson informed Willis of their intent to call a meeting in February to discuss Willis's request to dissolve Belvedere. In response, Willis demanded information related to Belvedere's day-to-day operations, but O'Neill and Hutchinson refused to make the books and records available. Instead, they referred Willis to Belvedere's office manager. Willis never received the requested materials.

¶ 8 Unbeknownst to Willis, prior to the February meeting O'Neill and Hutchinson engaged Horwich, Coleman and Levin (HCL), a Chicago accounting and appraisal firm, to determine a market value for Willis's one-third interest in Belvedere. The retention letter stated that HCL was being asked to provide services in connection with the Belvedere litigation. HCL developed statistical models to estimate the value and it presented the models to O'Neill and Hutchinson. Defendants asked HCL not to prepare a written report and to stop further work on the appraisal. O'Neill and Hutchinson did not disclose any of the information they obtained from HCL to Willis.

¶ 9 At the February meeting, Willis asked for an appraisal of Belvedere but defendants responded that an appraisal was not necessary because they did not want to sell their interests in the company. After a three-hour discussion, Carlson agreed to sell all of Willis's interest in Belvedere to O'Neill and Hutchinson for $17.5 million. According to O'Neill and Hutchinson, this sum represented a return of Willis's approximately $4.2 million in capital account as of

December 31, 2006, plus $13.3 million, which was Willis's share of Belvedere's trading profits for 2007. The parties signed a one-page document. On March 6, 2008, counsel for defendants presented the parties with a four-page settlement agreement, which the parties signed.

¶ 10 The settlement agreement contained a section titled "Mutual General Releases." This section provides that "Willis and Carlson *** hereby release, acquit and forever discharge each and all of the Belvedere Parties *** of and from any and all manner of actions, claims, causes of actions, suits, debts, dues, sums of money, contracts, agreements, promises and demands whatsoever, in law or in equity, known or unknown, from the beginning of time through the date of this Agreement, including but not limited to all matters arising out of or relating to the Arbitration and the State Court Case." The section further provides that the parties "have accepted their respective consideration as a complete compromise of controversy between the parties involving disputed issues of law and fact, and that each party fully assumes the risk that the facts or the law may be other than they believe."

¶ 11 The agreement also states that the parties have been advised by their attorneys and "agree that they are not relying upon any promise, inducement, representation, statement, disclosure or duty of disclosure of the other party in entering into this Agreement. The parties to this Agreement agree that they are not fiduciaries to each other with respect to the negotiation, preparation and execution of this Agreement. This Agreement supersedes all prior written and verbal agreements and understandings related to the subject matter of the Agreement." The agreement also stated that the parties shall bear their own legal fees and costs "and shall not seek reimbursement from each other for payment *** in connection with the Arbitration, the State Court Case, the negotiation and preparation of this Agreement or any other matter." However,

the settlement agreement provides that "[i]n an action brought by any party to enforce the terms hereof, the prevailing party shall be entitled to recover its reasonable legal fees and expenses in addition to any other amounts or relief provided to such prevailing party."   Pursuant to the settlement, Willis dismissed the state court case.

¶ 12   Approximately three years later, Carlson and his counsel were researching a matter related to the case when they contacted HCL.   They discovered that Belvedere had retained HCL in January 2008 to appraise the value of Belvedere.   Willis had no knowledge of HCL's prior work for Belvedere until this point.   Willis subsequently filed a legal malpractice action against its counsel, claiming that they failed to obtain an appraisal of Belvedere's worth and "thereby permitted their clients to settle without any appropriate advice and counsel as to what was being surrendered."   Willis also filed another arbitration action against defendants with the CBOE on May 17, 2011.   Willis alleged that at the time of the settlement, defendants were fiduciaries of Willis and committed fraud by withholding information regarding Belvedere's value.   Defendants filed a motion to dismiss, which the CBOE granted with prejudice on March 5, 2012.

¶ 13   On March 26, 2012, Willis filed its initial section 2-1401 petition in the trial court, and filed an amended petition on December 20, 2012.   In December 2012, Willis retained Rona Seams to provide an expert opinion on the value of Willis's prior interest in Belvedere based on externally available information and without Belvedere's cooperation.   Seams relied on Belvedere documents created between 2004 and 2008 in preparing her report, and Willis had these documents in its possession at the time of the settlement agreement.   Seams concluded

that "Mr. Carlson's uncompensated value based on 2007 Belvedere financials is more than $49.8 million as of March 1, 2008."

¶ 14 Defendants filed a motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)). Defendants argued that the petition should be dismissed pursuant to section 2-615 (735 ILCS 5/2-615 (West 2012)) because, among other reasons, it failed to meet the affidavit and due diligence requirements of section 2-1401. They argued that pursuant to section 2-619 (735 ILCS 5/2-619 (West 2012)), the petition should be dismissed because it was barred by the CBOE's March 5, 2012 order, section 2-1401's two-year statute of limitations, the release contained in the settlement agreement, and Illinois Supreme Court Rule 201(b)(3) (eff. July 1, 2014). Willis filed a motion for an evidentiary hearing which the trial court denied without prejudice on April 4, 2013.

¶ 15 On June 7, 2013, the trial court dismissed Willis's section 2-1401 petition with prejudice. It found that the petition failed to state a claim for rescission of the settlement agreement because it did not allege sufficient facts to show that Willis intended to return the $17.5 million he received in the settlement. The petition also failed to state a claim for fraudulent concealment due to the nonreliance clause in the agreement, and the mutual release also barred Willis's fraud and breach of fiduciary duty claims. The trial court further found that Willis failed to exercise due diligence in the 2007 litigation because it never tried to obtain an appraisal prior to settling, even though it was able to produce such an appraisal in the present litigation based on documents available at the time of the settlement. The trial court also determined that *res judicata* barred the petition and that Rule 201(b)(3) protected HCL's appraisal from disclosure as consultant work product.

¶ 16    Willis filed a notice of appeal on July 5, 2013.   Prior to Willis filing the notice of appeal, defendants filed a fee petition seeking fees and costs pursuant to the settlement agreement.   On January 6, 2014, the trial court awarded defendants $172,391.75 in fees and costs.   Willis filed a second notice of appeal from this order on January 31, 2014.   This court consolidated the two appeals.

¶ 17                                                ANALYSIS

¶ 18    Willis contends that the trial court erred in dismissing his section 2-1401 petition for relief. Section 2-1401 of the Code sets forth a comprehensive statutory procedure by which final orders and judgments may be vacated more than 30 days after entry by the trial court.   735 ILCS 5/2-1401 (West 2012).   To obtain relief under this section, the petitioner must allege specific facts showing (1) the existence of a meritorious defense; (2) due diligence in presenting the defense to the trial court; and (3) due diligence in filing the section 2-1401 petition.   *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986).   If the reviewing court finds that the petitioner failed to exercise due diligence, it need not address whether petitioner alleged sufficient facts to establish a meritorious defense.   *Id*. at 221-22.

¶ 19    Due diligence requires the petitioner to show that "he acted reasonably, and not negligently, when he failed to initially resist the judgment."   *Id.* at 222.   A section 2-1401 proceeding "is not intended to give the litigant a new opportunity to do that which should have been done in an earlier proceeding or to relieve the litigant of the consequences of [his] mistake or negligence."   *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 148 (1996).   To prevail on a section 2-1401 petition based on allegations of newly discovered evidence, the petitioner must show that the evidence was not known to him at the time of the original proceeding "and could

not have been discovered by [him] with the exercise of reasonable diligence." *In re Marriage of Goldsmith*, 2011 IL App (1st) 093448, ¶ 15. Where the trial court dismisses a section 2-1401 petition without holding an evidentiary hearing, our standard of review is *de novo*. *People v. Vincent*, 226 Ill. 2d 1, 18 (2007).[1]

¶ 20 Regarding the element of due diligence, the trial court found that Willis failed to exercise due diligence in the 2007 litigation because it never tried to obtain an appraisal prior to settling, even though it produced such an appraisal in the present litigation based on documents available at the time of the settlement. In support of its section 2-1401 petition, Willis retained expert Rona Seams who formed an opinion on the value of Willis's interest in Belvedere based on externally available information and without Belvedere's cooperation. Relying on Belvedere documents created between 2004 and 2008 in preparing her report, Seams concluded that "Mr. Carlson's uncompensated value based on 2007 Belvedere financials is more than $49.8 million as of March 1, 2008." Willis had these documents in its possession at the time of the settlement proceedings but did not use this material to obtain its own appraisal before executing the settlement agreement with defendants for $17.5 million. We understand Willis's feeling of being cheated by its former partners and the assertion that it was lulled into accepting a grossly reduced amount for its share of the Belvedere company. However, we cannot overlook the fact that in order to prevail on its petition, Willis must assert that the true value of the shares in question could not have been ascertained at the time that it executed the settlement agreement to

---

[1]We note that there is some disagreement about whether the trial court's dismissal of a section 2-1401 petition based on a lack of due diligence is reviewed under the abuse of discretion standard or *de novo*. See *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321 (2010); *MB Financial Bank, N.A. v. Ted & Paul, LLC*, 2013 IL App (1st) 122077. Nevertheless, our determination is the same under either standard.

sell the shares to its former partners. Clearly, Willis is unable to meet that test. Because of its business experience, Willis knew, or should have known, that an appraisal of the value of the company was necessary prior to selling its shares, given the magnitude of the transaction. Further, Willis had reason to be suspicious of its partners, their motives and truthfulness in light of their actively obstructive behavior in denying Willis access to important information about the business previously. We note also that Willis could have sought an appraisal of the business using the very documents in its possession at the time of the settlement. It is those same documents that Willis later used to retrospectively determine the value of the company at the time of settlement, and yet, Willis chose instead to put its faith in the representations of the very partners whose questionable behavior was the catalyst for the sale and settlement. Empathy aside, Willis must meet the necessary legal requirements in order to prevail on its petition. Failing to do so, we cannot extricate Willis from the natural consequences of a bad business decision. The trial court did not err in finding that Willis failed to exercise due diligence in the settlement proceedings. Section 2-1401 does not provide the petitioner relief from "the consequences of his own mistake or negligence." *Smith*, 114 Ill. 2d at 222.

¶ 21    Willis disagrees, arguing that it exercised adequate due diligence given that defendants had exclusive control of Belvedere at the time and, therefore, Willis did not have the same ability to discover the truth about the value of his interest in Belvedere as defendants. Willis also argues that defendants owed him a fiduciary duty and, as such, it justifiably relied on their misrepresentations regarding the value of Willis's interest. As support, Willis cites to *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 195 (1989). In *Gerill*, however, the trial court "disallowed recovery for over $800,000 of the almost $1.1 million in liabilities that it

found Hargrove had misrepresented" because the disallowed items included costs that could have been discovered "through reasonable and prudent diligence." *Id*. at 194. The liabilities the trial court allowed in recovery involved "matters almost exclusively within the knowledge of Hargrove and it would have been difficult, if not impossible" for the plaintiff to discover them. *Id*. at 195. The supreme court agreed with the trial court's determination. *Id*. Here, Willis had access to Belvedere documents that could have been used to obtain an appraisal of its interest prior to the execution of the settlement agreement, as evidenced by Seams' report. *Gerill* does not support Willis here.

¶ 22 Furthermore, Willis does not present any cases supporting its contention that if defendants owed the petitioner a fiduciary duty, the petitioner is relieved of its duty to exercise due diligence in a section 2-1401 petition for relief. Even if defendants owed Willis a duty to disclose and fraudulently concealed the appraisal obtained from HCL, Willis must have detrimentally relied on the concealment. *Himmel*, 285 Ill. App. 3d at 148. To set aside a settlement agreement based on fraudulent concealment in a section 2-1401 petition, Willis must show that "the misrepresentation of the assets could not reasonably have been discovered at the time of, or prior to, the entry of the judgment." *Id*. As discussed above, Belvedere documents available prior to the entry of the settlement agreement could have been used by Willis to obtain its own appraisal. The trial court did not err in dismissing Willis's section 2-1401 petition for lack of due diligence. [2]

¶ 23 Willis next contends that the trial court should have granted its motion for an evidentiary hearing on the petition because it alleged facts showing that defendants fraudulently concealed the

_____

[2] Due to our disposition on appeal, we need not address Willis's other contentions regarding the merits of the trial court's dismissal of its section 2-1401 petition.

existence of the HCL appraisal prior to the settlement. However, as defendants point out in their brief, they did not answer Willis's petition on the merits but instead filed a motion to dismiss the petition. They did not allege facts contradicting the petition's allegations that defendants withheld the HCL appraisal from Willis. In this situation, the trial court does not abuse its discretion by not holding an evidentiary hearing. See *Ostendorf v. International Harvester Co*., 89 Ill. 2d 273, 286-87 (1982). Also, the trial court found that Willis did not exercise due diligence in discovering the appraisal value of his interest in Belvedere prior to the settlement; in such a case, it is not an abuse of discretion to deny a request for an evidentiary hearing. *Ruiz v. Wolf*, 250 Ill. App. 3d 121, 126-27 (1993). The cases cited by Willis as support, *In re Marriage of Reines*, 184 Ill. App. 3d 392 (1989), *Lubbers v. Norfolk & Western Ry. Co.*, 147 Ill. App. 3d 501 (1986), *People v. B.R. MacKay & Sons, Inc.*, 141 Ill. App. 3d 137 (1986), and *Gatto v. Walgreen Drug Co.*, 61 Ill. 2d 513 (1975), do not involve a finding that the petitioner failed to exercise due diligence. Furthermore, the record does not contain a transcript of the hearing on this motion. Without this material, we cannot know the arguments presented at the proceedings or the reasoning of the trial court when it made its determinations. Under these circumstances, we must presume that the trial court acted in conformity with the law and had a sufficient basis in the record for its determination. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 24    Willis also contends that the trial court erred in awarding attorney fees and costs to defendants. Generally, each party in a case is responsible for its own attorney fees and costs unless there is express contractual or statutory language to the contrary. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 64. Since it is an exception to the general rule, a contract provision that provides for payment of the other party's attorney fees is strictly construed by courts. *Chapman*

*v. Engel*, 372 Ill. App. 3d 84, 87 (2007). Therefore, a reviewing court will interpret fee-shifting provisions "to mean nothing more–but also nothing less–than the letter of the text." *Erlenbush v. Largent*, 353 Ill. App. 3d 949, 952 (2004). Strict construction of fee-shifting provisions is warranted because "attorney fees can be a substantial expense and are an important consideration when entering into contracts." *Negro Nest, LLC v. Mid-Northern Management, Inc.*, 362 Ill. App. 3d 640, 651 (2005). We review the trial court's interpretation of a fee-shifting provision in a contract *de novo*. *Chapman*, 372 Ill. App. 3d at 87.

¶ 25 Here, the settlement agreement provides that "[i]n an action brought by any party to enforce the terms hereof, the prevailing party shall be entitled to recover its reasonable legal fees and expenses in addition to any other amounts or relief provided to such prevailing party." Willis filed a section 2-1401 petition to invalidate the settlement agreement, not to enforce it. Defendants here defended the agreement in response to the petition, but the provision says nothing about receiving fees in such circumstances. The clear terms of the provision state that attorney fees and expenses may be awarded to a prevailing party in "an action brought by any party to enforce the terms" of the agreement. Therefore, the trial court erred in awarding attorney fees and costs to defendants pursuant to the settlement agreement.

¶ 26 For the foregoing reasons, the judgment of the circuit court is affirmed as to the dismissal of the section 2-1401 petition. However, we reverse the circuit court's award of attorney fees and costs to defendants.

¶ 27 Affirmed in part and reversed in part.

WILLIS CAPITAL LLC,

                Plaintiff-Appellant,

      v.

BELVEDERE TRADING LLC, THOMAS
HUTCHINSON and OWEN O'NEILL,

                Defendants-Appellees.

Nos. 1-13-2183 & 1-14-0381
(Consolidated)

Appellate Court of Illinois
First District, First Division

March 16, 2015

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

Appeal from the Circuit Court of Cook County.

The Honorable Kathleen M. Pantle, Judge Presiding.

Cronin & Co., Ltd., 161 North Clark Street, Suite 2550, Chicago, IL 60601,
(Thomas C. Cronin, Daniel J. Kelley and Leland W. Hutchinson, Jr., of counsel),
for APPELLANT.

Dykema Gossett PLLC, 10 South Wacker Drive, Suite 2300, Chicago, IL
60606, (Patrick T. Stanton and Heather L. Kramer, of counsel), for APPELLEES.