# Illinois Official Reports

## Appellate Court

---

### *Carlson v. Michael Best & Friedrich LLP*, 2021 IL App (1st) 191961

---

| | |
|---|---|
| Appellate Court Caption | WILLIAM CARLSON and WILLIS CAPITAL LLC, Plaintiffs-Appellants, v. MICHAEL BEST & FRIEDRICH LLP, THOMAS CRONIN, AARON L. DAVIS, LELAND W. HUTCHINSON JR., DANIEL J. KELLEY, and CRONIN & COMPANY LTD., Defendants (MICHAEL BEST & FRIEDRICH LLP, Defendant-Appellee). |
| District & No. | First District, Fourth Division<br>No. 1-19-1961 |
| Filed<br>Rehearing denied | July 15, 2021<br>August 26, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-00383; the Hon. Daniel J. Kubasiak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joseph T. Gentleman, of Chicago, for appellants.<br><br>Michael L. Shakman, Zachary J. Freeman, and William J. Katt, of Miller Shakman Levine & Feldman LLP, of Chicago, for appellee. |

JUSTICE MARTIN delivered the judgment of the court, with opinion. Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion.

## OPINION

### I. BACKGROUND

The following background facts and procedural history are taken from the common law record, the parties' briefs, and the related opinions of *Carlson v. Fish*, 2015 IL App (1st) 140526, and *Willis Capital LLC v. Belvedere Trading LLC*, 2015 IL App (1st) 132183.[1]

In 2002, William Carlson, the sole owner and member of Willis Capital LLC (Willis) founded Belvedere Trading, LLC (Belvedere), with an initial investment of $405,000.[2] Belvedere was created to trade S&P 500 equity index options. Thomas Hutchinson and Owen O'Neill eventually joined Belvedere as partners, with Hutchinson investing $85,000 and O'Neill investing $160,000. *Willis Capital LLC*, 2015 IL App (1st) 132183, ¶ 5. "Carlson was the sole managing member and held about a 62% membership interest; O'Neill held about a 25% interest and Hutchinson held the remaining 13% interest." *Carlson*, 2015 IL App (1st) 140526, ¶ 6. However, by 2004, O'Neill and Hutchinson were managing members and owned an equal 33.3% interest along with Carlson. *Id.*

In 2005, Carlson took a leave of absence from actively managing Belvedere due to health reasons. When Carlson returned to the company in 2006, "he had a falling out with O'Neill and Hutchinson over numerous issues, including profit distribution and management." *Id.* ¶ 7.

In March 2007, Carlson retained attorneys Shawn M. Collins and David J. Fish of the Collins Law Firm, P.C., to represent him in his dispute with O'Neill and Hutchinson. Fish later formed the Fish Law Firm while continuing to represent Carlson; the two law firms will collectively be referred to as "Collins." *Id.*

In May 2007, Collins filed a request for arbitration on Carlson's behalf with the Chicago Board of Options Exchange (CBOE), as provided for in Belvedere's operating agreement. *Id.*; *Willis Capital LLC*, 2015 IL App (1st) 132183, ¶ 6. Collins also filed a complaint for injunctive relief in the circuit court of Cook County in October 2007, seeking to dissolve Belvedere and compel it to buy Carlson's interest in the company for fair value in accordance with section 35-60 of the Limited Liability Company Act (805 ILCS 180/35-60 (West 2006) (repealed by Pub. Act 99-637 (eff. July 1, 2017))). *Willis Capital LLC*, 2015 IL App (1st) 132183, ¶ 6; *Carlson*, 2015 IL App (1st) 140526, ¶ 7. During this time, Carlson asked O'Neill and Hutchinson to obtain an appraisal of Belvedere, but they refused. *Willis Capital LLC*, 2015 IL App (1st) 132183, ¶ 6. O'Neill and Hutchinson also denied Carlson's request for access to Belvedere's books and records. The circuit court subsequently entered an order compelling arbitration. *Id.*

---

[1]Carlson also sued the attorneys and law firms who represented him in these two cases. Those claims are not part of this appeal.

[2]For ease of reference, we will refer interchangeably to Willis Capital LLC as both Willis and Carlson.

¶ 7     In February 2008, the parties agreed to mediate their dispute. The parties "agreed that the mediation would be principals only, would be nonbinding, and would be supervised by mediator Douglas Gerrard." *Carlson*, 2015 IL App (1st) 140526, ¶ 8. Prior to the mediation, Carlson did not obtain an independent appraisal of his interest in Belvedere, but in an e-mail to Collins, he estimated that, by the end of 2009, the company could be sold for $100 million. *Id.* Unbeknownst to Carlson, prior to the mediation, O'Neill and Hutchinson employed the accounting firm of Horwich, Coleman, and Levin (HCL) to conduct an appraisal of Belvedere and determine a market value of Carlson's one-third interest in the company. *Willis Capital LLC*, 2015 IL App (1st) 132183, ¶ 8. HCL developed statistical models to estimate this value and presented these models to O'Neill and Hutchinson. After receiving the statistical models, O'Neill and Hutchinson directed HCL not to prepare a written report and to stop further work on the appraisal. *Id.* None of this was disclosed to Carlson.

¶ 8     At the February mediation, Carlson again asked for an appraisal of Belvedere, but O'Neill and Hutchinson responded that an appraisal was unnecessary because they did not want to sell their interests in the company. *Id.* ¶ 9. The mediation resulted in Carlson agreeing to sell his interest in Belvedere for $17.5 million.

¶ 9     After the mediation, but before he signed the proposed settlement agreement that would memorialize the terms of the sale, Carlson met with his accountant, John Flaherty, to discuss the tax consequences resulting from the settlement agreement. According to Carlson, Flaherty stated in jest that Carlson did not get enough money out of the settlement because of the large amount of taxes he would owe as a result of the settlement agreement. Nevertheless, Carlson ultimately signed the settlement agreement. Carlson and his two former partners signed a term sheet delineating the terms of the sale, which were memorialized in a settlement agreement signed by the parties on March 4 and 6, 2008. *Carlson*, 2015 IL App (1st) 140526, ¶ 8.

¶ 10    The settlement agreement provided in part that it represented "a complete compromise of the controversy between the parties involving disputed issues of law and fact, and that each party fully assumes the risk that the facts or law may be other than they believe." The agreement also provided that the parties agree "that they are not fiduciaries to each other with respect to the negotiations, preparation and execution of" the agreement. The agreement went on to provide that the parties were advised by their respective attorneys and advisors as to the merits of the agreement and that no party was relying on any promise, representation, or disclosure of any other party. In addition, the agreement contained a fee-shifting provision that provided that attorney fees and expenses could be awarded to a prevailing party in "an action brought by any party to enforce the terms" of the agreement.

¶ 11    Beginning in September 2008, and continuing through November 2008, Carlson exchanged e-mails with Shawn Collins concerning his belief that O'Neill and Hutchinson had fraudulently tricked him into selling his interest in Belvedere for less than the company's true value. *Id.* ¶¶ 9-15. Carlson and Shawn Collins discussed the possibility of having the circuit court set aside the settlement agreement and of Shawn Collins obtaining co-counsel in a possible fraud action against Carlson's former partners.

¶ 12    The record reveals that from November 2008 to the early part of December 2008, Carlson consulted with Chris Parker, a college friend and an attorney at the law firm of Michael Best & Friedrich, LLP (Michael Best). Carlson asked Parker to review the settlement agreement and evaluate whether Carlson may have any viable fraud claims against his former partners. Carlson also began to express dissatisfaction with the legal representation provided by Collins.

¶ 13    On November 19, 2008, Carlson met with attorneys from the law firm of Drinker, Biddle & Reath, LLP (Drinker), to review the settlement agreement. According to Carlson, attorneys at Drinker raised questions about whether the legal services Collins rendered to him in connection with the settlement agreement had been substandard. *Id.* ¶ 16. Carlson claimed this was the first time he became aware of a possible legal malpractice claim against Collins. *Id.*

¶ 14    Carlson officially engaged Michael Best from August 18, 2010, through September 16, 2010, for consultation regarding a potential legal malpractice action against Collins. During this time, Parker advised Carlson that a legal malpractice action against Collins "may be tough in the face of the statute of limitations." Parker told Carlson that the applicable statute of limitations for a legal malpractice claim was two years from the date he should have learned of the malpractice.

¶ 15    On November 11, 2010, Carlson engaged the law firm of Cronin & Co., Ltd (Cronin). Carlson and counsel from Cronin eventually contacted HCL, the accounting firm which, unbeknownst to Carlson, had conducted the pre-settlement appraisal of Belvedere at the direction of O'Neill and Hutchinson. *Willis Capital LLC*, 2015 IL App (1st) 132183, ¶ 12.

¶ 16    Cronin filed a legal malpractice complaint against Collins on November 18, 2010. In the complaint, Carlson alleged that Collins failed to obtain an appraisal of Belvedere and " 'thereby permitted their clients to settle without any appropriate advice and counsel as to what was being surrendered.' " *Id.* Cronin subsequently filed an amended legal malpractice complaint against Collins on February 23, 2011. In March 2011, Collins moved to dismiss the amended complaint on statute of limitations grounds.

¶ 17    On May 17, 2011, Cronin filed a request for arbitration on Carlson's behalf with the CBOE against Belvedere, O'Neill, and Hutchinson. *Id.* Carlson alleged that O'Neill and Hutchinson were fiduciaries of Willis and had committed fraud by withholding information regarding Belvedere's value. O'Neill and Hutchinson filed a motion with the CBOE to dismiss the arbitration.

¶ 18    Carlson and Collins subsequently entered into a tolling agreement on July 13, 2011, under which Carlson voluntarily dismissed his amended legal malpractice complaint against Collins, without prejudice. The tolling agreement provided in part that if the arbitration action "is resolved on or after April 13, 2012, [Carlson] shall have a period of 90 days after resolution of the arbitration to refile this action. If the arbitration is resolved before April 13, 2012, the one-year refilling provision in 735 ILCS 5/2-1009 shall remain intact." The tolling agreement further provided in part that it "shall not act to revive any cause(s) of action already barred by the statute of limitations when the legal malpractice complaint was filed on November 18, 2010."

¶ 19    The CBOE arbitration panel granted O'Neill and Hutchinson's motion to dismiss the arbitration with prejudice on March 5, 2012. *Id.* On March 26, 2012, in the circuit court, Cronin filed a section 2-1401 petition (735 ILCS 5/2-1401 (West 2012)), and an amended petition on December 20, 2012, against Belvedere and Carlson's former partners, seeking to " 'reopen' " the settlement agreement. *Willis Capital LLC*, 2015 IL App (1st) 132183, ¶¶ 1, 13. O'Neill and Hutchinson filed a motion to dismiss the amended petition pursuant to section 2-619.1 of Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)). They argued that the amended petition should be dismissed because it was barred by the following: (1) the CBOE arbitration panel's order of March 5, 2012, dismissing the arbitration; (2) the two-year statute of limitations applicable to section 2-1401 petitions; (3) the release contained in the settlement

agreement; and (4) Illinois Supreme Court Rule 201(b)(3) (eff. July 1, 2014), which protects the identity of consultants, their opinions, and work product from discovery, except under "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means." *Willis Capital LLC*, 2015 IL App (1st) 132183, ¶ 14.

¶ 20    On June 7, 2013, the circuit court dismissed Carlson's amended section 2-1401 petition with prejudice. *Id.* ¶ 15. The circuit court determined that the amended petition to reopen the settlement agreement failed to state a claim for rescission of the agreement because the amended petition did not allege sufficient facts showing that Carlson intended to return the $17.5 million he received in the settlement. *Id.* The court further determined that the amended petition failed to state a claim for fraudulent concealment due to the nonreliance clause in the settlement agreement and that the mutual release clause contained in the agreement barred the claims of fraud and breach of fiduciary duty. *Id.* The court also found that Carlson failed to exercise due diligence in the 2007 litigation because he did not try to obtain an appraisal of Belvedere prior to settling. The court further found that the amended petition to reopen the settlement agreement was barred by the doctrine of *res judicata* and that Rule 201(b)(3) protected HCL's appraisal from disclosure as consultant work product. *Id.* On January 6, 2014, the circuit court awarded $172,391.75 in attorney fees and costs to Belvedere, O'Neill, and Hutchinson. *Id.* ¶ 16. Carlson appealed (*Willis Capital LLC*, 2015 IL App (1st) 132183).

¶ 21    While the *Willis Capital LLC* appeal was pending, Cronin refiled the legal malpractice complaint against Collins on July 5, 2013. The complaint alleged that Collins breached its professional duties to Carlson by (1) failing to obtain an independent appraisal of Belvedere's value prior to the mediation, (2) permitting him to attend the meditation without an attorney, (3) advising him to sign the mediated settlement agreement without any changes, and (4) failing to protect him from the fraudulent conduct of his former partners. *Carlson*, 2015 IL App (1st) 140526, ¶ 17.

¶ 22    On August 28, 2013, Collins filed a motion to dismiss the legal malpractice complaint pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2012)). Collins asserted that Carlson's complaint was time-barred by the two-year statute of limitations governing claims for legal malpractice (*id.* § 13-214.3(b)). *Carlson*, 2015 IL App (1st) 140526, ¶ 18.

¶ 23    Following a hearing on January 15, 2014, the circuit court granted Collins's motion to dismiss the legal malpractice complaint with prejudice. The circuit court determined that the cause of action accrued at the time Carlson knew he had been injured, which the court found was no later than September 2008. The court found that by November 12 or 13 of 2008, Carlson had identified his former partners as the wrongful cause of his injury, which put him on inquiry notice that a cause of action had accrued. The court concluded that because Carlson's initial legal malpractice complaint was filed on November 18, 2010, more than two years after his cause of action accrued, the complaint was time-barred by the two-year statute of limitations set forth in section 13-214.3(b) of the Code. Carlson appealed (*Carlson*, 2015 IL App (1st) 140526).

¶ 24    On February 27, 2014, Carlson entered into a second engagement with Michael Best. Carlson engaged Michael Best to act as a consultant in connection with pending litigation, *i.e.*, the *Willis Capital LLC* appeal and the *Carlson* appeal.

¶ 25    On appeal in *Willis Capital LLC*, this court affirmed in part and reversed in part. *Willis Capital LLC*, 2015 IL App (1st) 132183, ¶¶ 26-27. We affirmed the circuit court's judgment with respect to its decision to dismiss Carlson's amended section 2-1401 petition to reopen the settlement agreement without holding an evidentiary hearing. We determined that even if O'Neill and Hutchinson owed Carlson a fiduciary duty and fraudulently concealed the results of the appraisal from him, this did not relieve Carlson of his duty to exercise due diligence in discovering the appraisal value of his interest in Belvedere prior to the settlement. *Id.* ¶¶ 20-23. However, we reversed the circuit court's judgment with respect to the award of attorney fees and costs. We pointed out that fee-shifting provisions are strictly construed and determined that the contractual language of the fee-shifting provision contained in the settlement agreement was intended to award attorney fees and costs to prevailing parties who sought to enforce the terms of the agreement, as opposed to parties, such as O'Neill and Hutchinson, who sought to defend the terms of the agreement in response to a section 2-1401 petition to invalidate the agreement. *Id.* ¶¶ 24-25.

¶ 26    On appeal in *Carlson*, this court affirmed the circuit court's decision granting Collins's section 2-619(a)(5) motion to dismiss Carlson's legal malpractice complaint as time-barred by the two-year statute of limitations set forth in section 13-214.3(b) of the Code. *Carlson*, 2015 IL App (1st) 140526, ¶¶ 23, 48-49. We found that e-mail correspondence between Carlson and Collins, which began in September 2008 and continued through November 2008, along with certain judicial admissions made by Carlson, showed that he was aware he had been wrongfully injured by his former partners no later than November 13, 2008, and probably as early as September 2008. *Id.* ¶¶ 28-33.

¶ 27    Carlson's second engagement with Michael Best, which began on February 27, 2014, subsequently ended in May 2015, when he decided not to file a petition for leave to appeal the appellate court decision in *Carlson* to the Illinois Supreme Court.

¶ 28    On January 13, 2016, Carlson filed the legal malpractice complaint at issue here in the circuit court of Cook County against Michael Best, Cronin, and several of the law firms' respective attorneys.[3] An amended complaint was filed on August 31, 2016. In count I of the amended complaint, which is the only count directed at Michael Best, Carlson alleged that Michael Best breached the standard of care applicable to attorneys representing clients in legal malpractice matters by failing to advise him of the following: (1) when the statute of limitations would expire on his malpractice claims against Collins, (2) that he had a malpractice claim against Drinker, and (3) that he had a malpractice claim against Michael Best. Carlson alleged that, but for Michael Best's negligent advice, he would have filed timely legal malpractice claims against both Collins and Drinker.

¶ 29    Michael Best filed a motion for summary judgment on July 20, 2018. In the motion, Michael Best asserted that the following undisputed facts required judgment in its favor as a matter of law: (1) "Carlson cannot prove that Michael Best caused him any damages because his claims against the Collins Law Firm were time-barred when he first engaged Michael Best in August 2010," (2) "Carlson cannot sue Michael Best for the loss of his malpractice claim against the Drinker Law Firm because those claims were viable when he engaged successor counsel, the Cronin Law Firm, in November 2010," and (3) "Carlson cannot sue Michael Best

_____

[3]This appeal only concerns Michael Best and its attorneys.

for failing to inform him of a claim against it. There is no duty for a law firm to inform a client that he has a claim against it."

¶ 30        Michael Best also filed a motion to stay further discovery pending a ruling on the motion for summary judgment. Carlson, in turn, filed a motion requesting the court to allow him to conduct further discovery before responding to the motion for summary judgment. The circuit court subsequently granted Michael Best's motion for the stay and denied Carlson's motion to conduct further discovery.

¶ 31        On October 30, 2018, Carlson filed a motion for leave to file a second amended complaint *instanter*, which the circuit court denied. On that same date, Carlson filed his response to Michael Best's motion for summary judgment along with a renewed motion for leave to file a second amended complaint.

¶ 32        On December 14, 2018, the circuit court entered an opinion and order partially granting and partially denying Michael Best's motion for summary judgment. The circuit court granted summary judgment in favor of Michael Best, finding that there was no triable issue of fact as to whether Michael Best failed to advise Carlson as to any legal malpractice claims he may have had against Michael Best. However, the court determined that there were certain issues of fact which could not be resolved on summary judgment, namely: (1) whether Carlson's legal malpractice claims against Collins were already untimely at the time he first retained Michael Best on August 18, 2010, (2) whether Michael Best failed to timely advise Carlson that he may have a legal malpractice claim against Drinker, and (3) whether Carlson was aware of Collins's legal malpractice before the February 2008 settlement. In addition, the circuit court again denied Carlson leave to file a second amended complaint. The circuit court determined that the claims in the proposed second amended complaint concerned claims of legal malpractice against Michael Best that allegedly occurred in 2008, which extended beyond the six-year statute of repose for legal malpractice claims.

¶ 33        Michael Best filed a motion to reconsider the partial denial of its motion for summary judgment. On May 3, 2019, the circuit court reconsidered the matter and entered summary judgment on Carlson's remaining claims in favor of Michael Best. The circuit court analyzed section 13-214.3 of the Code, which contains a two-year statute of limitations and six-year statute of repose for malpractice actions against attorneys (735 ILCS 5/13-214.3(b), (c) (West 2014)), and determined that conversations between Carlson and his accountant John Flaherty in June 2008 indicated that, by the time Carlson first retained Michael Best on August 18, 2010, he was already on inquiry notice of the facts underlying his legal malpractice claims against Collins and therefore those claims expired before Carlson engaged Michael Best. The circuit court further determined that Michael Best did not cause Carlson to lose any legal malpractice claims against Drinker because those claims were still viable after Michael Best's representation of Carlson ended and after he engaged new counsel.

¶ 34        On May 7, 2019, the circuit court entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), finding that there was no just reason to delay enforcement or appeal from its orders of December 13, 2018, and May 3, 2019.

¶ 35        On June 4, 2019, Carlson filed a motion to reconsider the orders granting summary judgment in favor of Michael Best. In the motion, Carlson asserted for the first time that statements attributable to him suggesting that his accountant Flaherty told him that he had a "real problem" with the settlement agreement because Carlson had "left $12 million on the table" was either inaccurate or constituted inadmissible hearsay. Carlson subsequently filed an

amended motion to reconsider based on purported newly discovered evidence that he allegedly demonstrated that his conversations with his accountant, Flaherty, occurred prior to the settlement agreement and that Flaherty denied telling him that he had a "real problem" with the settlement agreement or that he "left $12 million on the table."

¶ 36    On August 29, 2019, the circuit court entered an order denying Carlson's motion to reconsider and his amended motion to reconsider and allowed him 30 days from entry of the order to file an appeal. Carlson filed a notice of appeal on September 25, 2019.

¶ 37    We have jurisdiction to hear this appeal pursuant to Rule 304(a), which provides that "an appeal may be taken from a final judgment as to one or more but fewer than all of the parties *** if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." *Id.* We will provide additional facts in the analysis section where necessary to address specific issues raised on appeal.

¶ 38                                II. ANALYSIS
¶ 39                              A. Summary Judgment
¶ 40    Carlson appeals the circuit court's order granting summary judgment in favor of defendant Michael Best. "The purpose of summary judgment is to determine whether a genuine issue of material fact exists that would require a trial." *Hodges v. St. Clair County*, 263 Ill. App. 3d 490, 492 (1994). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILC 5/2-1005(c) (West 2012). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Our review of a summary judgment order is *de novo*. *Id.*

¶ 41    Carlson advances a number of arguments in support of his overall contention that the circuit court erred in granting summary judgment in favor of Michael Best. We address each in turn.

¶ 42                     1. Leave to File Second Amended Complaint
¶ 43    Carlson first argues that the circuit court erred in denying his motion for leave to file a second amended complaint, arguing that the proposed second amended complaint added additional facts and expanded upon the theories of liability. Michael Best responds that the circuit court did not abuse its discretion because (1) the amendments in Carlson's proposed second amended complaint concern allegations of legal malpractice against Michael Best occurring in 2008, which are time-barred under the statute of repose governing claims of attorney malpractice and (2) Carlson fails to satisfy the four factors that courts consider in determining whether leave to amend pleadings should be granted as set forth in *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 44    A circuit court has broad discretion in deciding whether to grant leave to amend a pleading prior to entry of a final judgment, and its decision will not be disturbed absent an abuse of that discretion. *Abramson v. Marderosian*, 2018 IL App (1st) 180081, ¶ 30. A circuit court abuses

its discretion in denying leave to amend a pleading if granting leave to amend would further the ends of justice. *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 50.

¶ 45    In this case, the circuit court denied Carlson's motion for leave to file a second amended complaint based upon its finding that the proposed amendments concerned allegations of legal malpractice against Michael Best occurring in 2008, which the court determined were time-barred under the statute of repose governing claims of attorney malpractice.

¶ 46                                    a. Statute of Repose

¶ 47    Section 13-214.3 of the Code (735 ILCS 5/13-214.3(b), (c) (West 2014)) "sets forth two independent timing requirements for legal malpractice actions: the two-year statute of limitations in subsection (b) and the six-year statute of repose in subsection (c)." *Sorenson v. Law Offices of Theodore Poehlmann*, 327 Ill. App. 3d 706, 708 (2002). Subsection (c) of the statute provides that an action for damages based on tort, contract, or otherwise against an attorney arising out of an act or omission in the performance of professional services may not be commenced more than six years after the date on which the act or omission occurred. 735 ILCS 5/13-214.3(c) (West 2014).

¶ 48    "This court's primary goal in construing a statute is to ascertain and give effect to the intent of the legislature." *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 15. The most reliable indicator of that intent is the statutory language itself, which must be given its plain and ordinary meaning. *Id.* If the statutory language is clear and unambiguous, we will apply it as written, without resorting to extrinsic aids of statutory construction, and will not depart from the plain meaning of the statute by reading into it exceptions, limitations, or conditions that conflict with the express intent. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 56.

¶ 49    "In contrast to a statute of limitations, which determines the time within which a lawsuit may be commenced after a cause of action has accrued, a statute of repose extinguishes the action after a defined period of time, regardless of when the action accrued." *Evanston Insurance*, 2014 IL 114271, ¶ 16. The purpose of repose statutes is "to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his or her cause of action." *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001); see also *Sorenson*, 327 Ill. App. 3d at 708 (statute of repose is designed to place an outer limit on the time for commencing an action). Statutes of repose " 'effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time.' " *California Public Employees' Retirement System v. ANZ Securities, Inc.*, 582 U.S. ___, ___, 137 S. Ct. 2042, 2049 (2017) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014)).

¶ 50    When the repose period expires, the cause of action is extinguished and the plaintiff's right to bring the action is terminated. *Evanston Insurance*, 2014 IL 114271, ¶ 16. "[S]tatutes of repose begin to run on the date of the last culpable act or omission of the defendant." (Internal quotation marks omitted.) *California Public Employees' Retirement System*, 582 U.S. at ___, 137 S. Ct. at 2049; see also *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 18 ("period of repose in a legal malpractice case begins to run on the last date on which the attorney performs the work involved in the alleged negligence"); *Sorenson*, 327 Ill. App. 3d at 710 ("statute of repose runs from the time of the acts or omissions alleged to have caused injury").

¶ 51        In this case, the last culpable act or omission that gave rise to Carlson's amendments to his proposed second amended complaint was Michael Best's alleged failure to advise Carlson in November 2008 about the statute of limitations for his potential claims against Collins. Thus, the six-year statute of repose started running in November 2008 and ended November 2014. Carlson filed his first complaint against Michael Best on January 13, 2016, and filed his initial motion for leave to file his second amended complaint on October 30, 2018. Therefore, the amendments to Carlson's proposed second amended complaint involved acts or omissions occurring well outside the six-year period of repose in section 13-214.3(c) of the Code.

¶ 52        Carlson argues that even if his 2008 claims against Michael Best were filed outside of the six-year statute of repose, the repose period should be tolled because—after the period of repose expired—Michael Best continued to represent him and engaged in a continuing course of negligent conduct. At the outset, we note that as Michael Best observes, Carlson waived this argument by failing to raise it in the circuit court. See, *e.g.*, *Wagner v. City of Chicago*, 166 Ill. 2d 144, 147 (1995) ("as a general rule, any issue not raised at the trial court level is waived"). However, we also note that the waiver rule is a limitation on the parties, not on the court. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 300 (1995). Accordingly, we exercise our discretion to consider this fully briefed argument on its merits. *People v. Begay*, 2018 IL App (1st) 150446, ¶ 55.

¶ 53        Illinois courts have consistently held that the statute of repose is not tolled by the continuation of the attorney-client relationship. *Mauer v. Rubin*, 401 Ill. App. 3d 630, 640 (2010); *Hester v. Diaz*, 346 Ill. App. 3d 550, 554 (2004); *Sorenson*, 327 Ill. App. 3d at 710; *Serafin v. Seith*, 284 Ill. App. 3d 577, 585-87 (1996); *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 544 (1995). Under the continuous course of treatment doctrine, the plaintiff must show "(1) that there was a continuous and unbroken course of *negligent* treatment, and (2) that the treatment was so related as to constitute one continuing wrong." (Emphasis in original.) *Cunningham v. Huffman*, 154 Ill. 2d 398, 406 (1993).

¶ 54        Thus, even assuming that the statute of repose for legal malpractice actions allowed for a theory of continuous course of negligent representation, it would not apply under the facts in this case because it is undisputed that Michael Best did not continuously represent Carlson but rather represented him for one month in 2010 and again in 2014. By the time Carlson consulted with Michael Best in 2010 and 2014, his claims against Collins were already time-barred by the two-year statute of limitations set forth in section 13-214.3(b) of the Code. See *Carlson*, 2015 IL App (1st) 140526, ¶¶ 23, 48-49. Therefore, even assuming Michael Best failed to advise Carlson about the statute of limitations for his potential claims against Collins in 2008, Michael Best's alleged omissions, which occurred in 2010 or 2014, were not a continuation of the 2008 omission.

¶ 55        Carlson contends that the doctrine of equitable estoppel bars Michael Best from asserting that any claims arising out of the alleged 2008 representation are time-barred by the six-year statute of repose because any delay in bringing these claims was caused by Michael Best's breach of the standard of care and fiduciary duty. We disagree.

¶ 56        "Equitable estoppel is a theory that precludes a litigant from denying prior assertions in cases where it would be unjust to permit the litigant to disavow express and implied statements upon which another party has relied and that have caused him to forego filing his suit." *Serafin*, 284 Ill. App. 3d at 588. "The common-law doctrine of equitable estoppel, as applied in the context of the statute of repose, parallels the fraudulent concealment statute." *Mauer*, 401 Ill.

App. 3d at 648. To establish that either applies, a party must generally show that the "defendant said or did something to lull or induce plaintiff to delay the filing of his claim until after the limitations period has run." *Wolf v. Bueser*, 279 Ill. App. 3d 217, 228 (1996). "[T]he doctrine of equitable estoppel will not apply to a case if defendant's conduct terminated within ample time to allow the plaintiff to still avail himself of any legal rights he may have had." *Serafin*, 284 Ill. App. 3d at 589; *Barratt v. Goldberg*, 296 Ill. App. 3d 252, 259 (1998) (same).

¶ 57    If Carlson had engaged Michael Best in 2008, and at that time Michael Best failed to advise him of the two-year statute of limitations applicable to his potential claims against Collins, under the six-year statute of repose, his cause of action would extinguish sometime in 2014. Carlson first officially engaged Michael Best from August 18, 2010, through September 16, 2010, for consultation regarding a potential legal malpractice action against Collins. Parker advised Carlson that a legal malpractice action against Collins "may be tough in the face of the statute of limitations." Parker told Carlson that the applicable statute of limitations for a legal malpractice claim was two years from the date he should have learned of the malpractice. When Parker advised Carlson in 2010 that his claims against Collins were subject to the two-year statute of limitations, four years remained under the statute of repose. Therefore, equitable estoppel would not apply to bar application of the statute of repose. In other words, when Carlson engaged Michael Best in 2010, he "had ample time to avail himself of any legal rights he may have had." *Serafin*, 284 Ill. App. 3d at 589.

¶ 58    Carlson next contends that Michael Best had a duty in 2014 to advise him that he had claims against Michael Best arising out of the law firm's alleged representation of him in 2008. We disagree with this contention for two reasons. First, as the above analysis shows, Carlson never had a viable malpractice claim against Michael Best based on the alleged 2008 representation, and therefore, there was nothing for Michael Best to disclose to Carlson in 2014. Second, "[t]his court has rejected the notion that a lawyer has an affirmative obligation to advise a client of the grounds to sue him for legal malpractice." *Lamet v. Levin*, 2015 IL App (1st) 143105, ¶ 32; see also *Fitch v. McDermott, Will & Emery, LLP*, 401 Ill. App. 3d 1006, 1025 (2010) (finding "no case that would require an attorney to affirmatively advise his client of his negligence and the statute of limitations for suing him").

¶ 59    Carlson maintains that this court should disregard the above precedent under the facts in this case, arguing that at the time he engaged Michael Best in 2014, "Best was specifically asked to review their prior work and they accepted that engagement." Carlson asserts that a question of fact exists as to the scope of Michael Best's duty. This argument is contrary to the express language in the parties' engagement letter of February 2014. The engagement letter limited the scope of Michael Best's engagement to advising Carlson on "pending litigation," the pending *Carlson* appeal, and the section 2-1401 petition to vacate in the *Willis Capital LLC* appeal.

¶ 60    Michael Best also contends that we should affirm the circuit court's ruling because Carlson fails to satisfy the four factors as set forth in *Loyola*, 146 Ill. 2d at 273.

### b. Application of the *Loyola* Factors

¶ 62    Our supreme court has identified four factors reviewing courts should consider in determining whether a circuit court abused its discretion in denying leave to amend a pleading: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether

the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Id.* "The party seeking leave to amend bears the burden of demonstrating that all four factors favor the relief requested." *United Conveyor Corp. v. Allstate Insurance Co.*, 2017 IL App (1st) 162314, ¶ 36. However, if that party fails to establish the first factor, showing that the proposed amendment would cure the defective pleading, then the court need not proceed to consider the remaining three factors. *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004).

¶ 63 We confine our analysis to the first *Loyola* factor because it is dispositive. We find that the proposed amendments to Carlson's second amended complaint—which sought to add a new allegation that Michael Best first represented Carlson in 2008, rather than in 2010, as Carlson alleged in his original and first amended complaints—cannot cure the pleading defects. At his discovery deposition, Carlson testified that he "[d]id not engage Michael Best in 2008." We agree with Michael Best's contention that Carlson's deposition testimony constituted a judicial admission that could not be contradicted by contrary evidence.

¶ 64 "A judicial admission is a deliberate, clear, unequivocal statement of a party about a concrete fact within that party's peculiar knowledge." (Internal quotation marks omitted.) *Caponi v. Larry's 66*, 236 Ill. App. 3d 660, 671 (1992). "It must concern a concrete fact and not be merely a matter of inference, opinion, estimate, or uncertain memory [citation], and such admission of fact carries with it an admission of other facts necessarily implied from it [citation]." *Id.* "A judicial admission may not be contradicted and is binding upon the party making such admission." *Id.* "Testimony at a discovery deposition may constitute a judicial admission." *In re Estate of Rennick*, 181 Ill. 2d 395, 407 (1998).

¶ 65 While discovery deposition testimony is normally treated as evidentiary admissions subject to explanation and contradiction, discovery deposition testimony will be treated as a judicial admission if it is "so deliberate, detailed and unequivocal, as to matters within the party's personal knowledge." *Chmielewski v. Kahlfeldt*, 237 Ill. App. 3d 129, 133 (1992). "The judicial policy behind this rule, which is well accepted in summary judgment cases, is that once a party has given sworn testimony, he should not be allowed to change his testimony to avoid the consequences of his prior testimony." *Id.* The determination of whether a party's statement is sufficiently unequivocal to be considered a judicial admission is a question of law when considering a motion for summary judgment. *Id.* at 134; *Caponi*, 236 Ill. App. 3d at 671.

¶ 66 In this case, with his counsel by his side, and with knowledge that his testimony was being transcribed and video recorded, Carlson gave deposition testimony under oath, that he "[d]id not engage Michael Best in 2008." There was no equivocation in Carlson's testimony, and his testimony pertained to a matter within his personal knowledge—whether he engaged Michael Best in 2008. Therefore, Carlson's deposition testimony constituted a judicial admission because it was a deliberate, clear, unequivocal statement about a concrete fact within his peculiar knowledge. See, *e.g.*, *Caponi*, 236 Ill. App. 3d at 671.

¶ 67 Carlson raises a number of arguments in support of his contention that his deposition testimony did not constitute a judicial admission. For the reasons which follow, we find that none of these arguments are persuasive.

¶ 68 Carlson argues that his deposition testimony that he "[d]id not engage Michael Best in 2008" is not a judicial admission because he was thinking "out loud" when he answered the deposition question about whether he engaged Michael Best in 2008. We disagree. When deposition testimony is deliberate, clear, and unequivocal about a concrete fact within the

party's personal knowledge, this testimony cannot be rendered equivocal by merely asserting that it was the result of "thinking out loud." See, *e.g.*, *Hansen v. Ruby Construction Co.*, 155 Ill. App. 3d 475, 481 (1987) (finding deposition testimony "was quite unequivocal").

¶ 69    We also reject Carlson's contention that he is not bound by his deposition answer because it constituted a legal conclusion. Carlson argues that even if his deposition answer is construed as an unequivocal statement that he did not "engage" Michael Best, the statement still does not constitute a judicial admission because judicial admissions only apply to facts and not legal conclusions and the word "engage" involves a legal conclusion about whether a contract or legally binding relationship existed. A legal conclusion is a "statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result." Black's Law Dictionary (11th ed. 2019). Carlson's deposition answer does not constitute a legal conclusion, rather it concerns an ultimate issue of fact within his personal knowledge: whether he engaged Michael Best in 2008.

¶ 70    Carlson next argues that even if he made an unequivocal statement that he believed he did not engage Michael Best in 2008, this statement was not dispositive because the subjective intent of a client about whether an attorney was "engaged" is not dispositive as to whether an attorney-client relationship was created. In the instant matter, Michael Best denied there was any attorney-client relationship in 2008, and Carlson, by his own deposition testimony, claimed not to have engaged Michael Best in 2008.

¶ 71    Illinois precedent establishes that mutual subjective intent between a potential client and attorney is required to create an attorney-client relationship. See, *e.g.*, *Pranno Donkle v. Lind*, 2018 IL App (1st) 171915, ¶ 33 (attorney-client relationship is a voluntary, contractual relationship that requires the consent of both the attorney and client); *Rubin & Norris, LLC v. Panzarella*, 2016 IL App (1st) 141315, ¶ 37 (attorney-client relationship cannot be created by attorney alone and generally the duty falls upon a potential client to initiate contact with the attorney). If the attorney-client relationship is one established by the intent of the parties under ordinary principles of contract law, which appears to be the present state of the law in Illinois, then no attorney-client relationship was ever formed between Michael Best and Carlson in 2008, as there was no meeting of the minds. As a result, we find that the proposed amendments to Carlson's second amended complaint do not cure the defects in his prior pleadings.

¶ 72    Accordingly, we find that in light of the applicable period of repose and Carlson's failure to establish the first *Loyola* factor, the circuit court did not abuse its discretion in denying Carlson's motion for leave to file a second amended legal malpractice complaint.

¶ 73                                    2. Denial of Discovery Motion

¶ 74    Carlson next contends that the circuit court abused its discretion when it denied his motion to conduct further discovery before responding to Michael Best's motion for summary judgment. Carlson asserts that since Michael Best filed its motion for summary judgment "at the very end of party depositions," he needed additional time to depose attorneys Shawn Collins, Patrick Collins, and Fish. Carlson contends that the depositions of these individuals were crucial because they represented him and they had numerous conversations with him that were relevant to the statute of limitations.

¶ 75    A circuit court is afforded considerable discretion in ruling on matters pertaining to discovery, and we will not disturb such a ruling absent an abuse of that discretion. *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 11 (2009).

- 13 -

A circuit court abuses its discretion where its ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would adopt the court's view. *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 513 (2005).

¶ 76    Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) specifies the procedure a party should follow when he or she believes that additional discovery is necessary to adequately respond to a motion for summary judgment. *Brummel v. Grossman*, 2018 IL App (1st) 170516, ¶ 91. Rule 191(b) requires in relevant part that the party seeking additional discovery provide an affidavit attesting that:

> "[M]aterial facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with reasons for his belief ***." Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013).

¶ 77    Carlson did not support his discovery motion with a Rule 191(b) affidavit, nor did he make any other efforts to comply with the requirements of the rule. "Failure to comply with Rule 191(b) defeats an objection on appeal that insufficient time for discovery was allowed." *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1064 (1992). Moreover, even if Carlson had sought to comply with Rule 191(b), he could not have done so. Carlson maintains that he needed to take the requested depositions to discover facts about his own conversations. However, statements that third parties made to Carlson are not "known only to" the third parties as required by the rule. Therefore, we find no abuse of discretion in the circuit court's decision to deny Carlson's motion to conduct additional discovery before responding to Michael Best's motion for summary judgment.

¶ 78                      3. Carlson's Claims Against Collins

¶ 79    Carlson next contends that Michael Best caused him to lose his legal malpractice claims against Collins because it failed to advise him in August 2010 about the statute of limitations applicable to those claims. Michael Best responds that it did not cause Carlson to lose his legal malpractice claims against Collins because those claims were already time-barred by the applicable statute of limitations triggered by inquiry notice, prior to Carlson engaging Michael Best in August 2010.

¶ 80    Section 13-214.3(b) of the Code provides that an action for legal malpractice must be filed within two years "from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2012). The question as to when a plaintiff knew or reasonably should have known of his legal injury, so as to trigger the applicable limitations period, is ordinarily a question of fact; however, it may be determined as a matter of law where the undisputed facts allow for only one conclusion. *Butler v. Mayer, Brown & Platt*, 301 Ill. App. 3d 919, 922 (1998).

¶ 81    The two-year statute of limitations applicable to legal malpractice actions incorporates the "discovery rule," which delays the commencement of the statutory period until the injured party knows or reasonably should know facts that would cause him or her to believe that their injury was wrongfully caused. *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 26. Discovery for purposes of the statute of limitations may rest upon so-called inquiry notice, where "[o]nce a party knows, or reasonably should know, both of his injury and that the injury was wrongfully caused, the injured person has the burden to inquire further as to the existence

- 14 -

of a cause of action." *Id.*; see also *Pruitt v. Schultz*, 235 Ill. App. 3d 934, 936-37 (1992) (discussing inquiry notice). "There is no requirement that a plaintiff must discover the full extent of his or her injuries before the statute of limitations begins to run." *Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004, 1010 (2002). "A person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Carlson*, 2015 IL App (1st) 140526, ¶ 23 (quoting *Hoffman*, 327 Ill. App. 3d at 1011). "At that point, the burden is upon plaintiff to inquire further as to the existence of a cause of action." *Hoffman*, 327 Ill. App. 3d at 1011.

¶ 82    A review of the record in this case shows that Carlson was on inquiry notice of his legal malpractice claims against Collins no later than June 2008. In June 2008, Carlson's accountant Flaherty told him that he "potentially [had] a real problem" regarding the proposed settlement agreement. At his deposition, Carlson verified an e-mail he sent to Collins regarding his conversation with Flaherty concerning the proposed settlement agreement, where the accountant told Carlson among other things: "I don't know what happened here *** but you left 12 million on the table. You should be able to go back and get it." Contrary to Carlson's suggestion, we do not believe that a reasonable person would consider the statement that he left $12 million on the negotiating table to have been made "in jest." Thus, Carlson was on inquiry notice of his potential legal malpractice claims against Collins no later than June 2008, more than two years before he engaged Michael Best in August 2010.

¶ 83    Carlson argues that his conversation with Flaherty did not trigger the statute of limitations because, even if it put him on notice that the settlement was insufficient, he did not know that the insufficiency may have had a wrongful cause. Contrary to this assertion, "actual knowledge of the alleged malpractice is not a necessary condition to trigger the running of the statute of limitations." *Carlson*, 2015 IL App (1st) 140526, ¶ 23. There is no requirement that a plaintiff must discover the full extent of his or her injuries before the statute of limitations begins to run. *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 367 (1995). Here, once Carlson's accountant informed him that he left $12 million on the negotiating table and that he should go back and get it, Carlson knew or should have known, that Collins, as his attorney, should have made certain he was adequately protected. At that point, Carlson had " 'sufficient information concerning [an] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' " *Hoffman*, 327 Ill. App. 3d at 1011 (quoting *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1981)).

¶ 84    Carlson alternatively argues that as a result of this court's decision in *Carlson*, 2015 IL App (1st) 140526, we are precluded by the law of the case doctrine and collateral estoppel from finding that the statute of limitations started running prior to November 12 or 13, 2008. Neither doctrine applies in this case.

¶ 85    The law of the case doctrine bars relitigation of an issue already decided by a reviewing court in a prior appeal. *Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill. App. 3d 933, 947 (2009). The doctrine does not apply in a subsequent stage of the litigation when the legal issues, underlying facts, or parties are different. *Id.*; see also *Gauger v. Hendle*, 2011 IL App (2d) 100316, ¶ 107 (law of the case doctrine does not apply when the legal issues, standards of proof, and parties are different). Collateral estoppel, also referred to as issue preclusion, bars a party from relitigating an issue if the issue decided in the prior

litigation is identical to one presented in the current case. *Pine Top Receivables of Illinois, LLC v. Transfercom, Ltd.*, 2017 IL App (1st) 161781, ¶ 8.

¶ 86        Thus, both the law of the case doctrine and collateral estoppel require that the court be presented with an issue identical to the one decided in the prior litigation. Neither doctrine applies here because this court's prior decision in *Carlson*, 2015 IL App (1st) 140526, involved different parties and different issues. The core issue in *Carlson* was whether there was any evidence indicating that Carlson knew or should have known or discovered that his former partners had wrongfully caused him injury thereby triggering the two-year statute of limitations for legal malpractice claims. *Id.* ¶ 3.

¶ 87                              4. Carlson's Claims Against Drinker

¶ 88        Carlson argues that even if his legal malpractice claims against Collins were time-barred by the time he engaged Michael Best in August 2010, Drinker caused that loss, and Michael Best, in turn, caused him to lose his legal malpractice claims against Drinker. Carlson contends that Drinker committed legal malpractice in November 2008 by failing to advise him that his legal malpractice claims against Collins were subject to the two-year statute of limitations and six-year statute of repose applicable to attorney malpractice actions. Carlson filed a certificate pursuant to section 1-109 of the Code (735 ILCS 5/1-109 (West 2010)), attesting that when he met with attorneys at Drinker in November 2008, they "did not identify any legal malpractice claim that [he] had against Collins or Fish nor did [they] discuss the statute of limitations or statute of repose related to legal malpractice claims." Carlson argues that if the statute of limitations expired on any legal malpractice claims he had against Collins before August 2010, then Michael Best violated the applicable standard of care by failing to advise him that he had legal malpractice claims against Drinker based on that law firm's failure to advise him that his claims against Collins were subject to the two-year statute of limitations and six-year statute of repose governing attorney malpractice actions.

¶ 89        Michael Best argues in response that it did not cause Carlson to lose any potential malpractice claims against Drinker because those claims were viable when Carlson last engaged Michael Best in February 2014 and they became time-barred by operation of the applicable statute of repose, which expired after their engagement ended and Carlson engaged new counsel.

¶ 90        Illinois case law is well settled that when a cause of action is viable at the time an attorney is discharged, and a second attorney is retained with enough time to preserve the plaintiff's cause of action, then the second attorney's failure to preserve that cause of action is a superseding cause of the loss of the action. See *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 755 n.3 (2008) (and cases cited therein). In this case, a review of the record shows that when Carlson last retained Michael Best in February 2014, any potential legal malpractice claims against Drinker were still viable.

¶ 91        The record reveals that Carlson met with attorneys from Drinker on November 19, 2008, to review the settlement agreement. According to Carlson, the attorneys raised questions about whether the legal services Collins rendered to him in connection with the settlement agreement had been substandard. *Carlson*, 2015 IL App (1st) 140526, ¶ 16. Carlson claimed this was the first time he became aware of a possible legal malpractice claim against Collins. Carlson subsequently met with the Drinker attorneys in October 2009, where they discussed his concerns about Collins's handling of the settlement agreement. According to Carlson, the

attorneys steered him away from filing a legal malpractice complaint against Collins by focusing on fraud claims against his former business partners.

¶ 92 The Drinker attorneys' actions in this regard were subject to the two-year statute of limitations and six-year statute of repose, and any negligent acts or omissions would have triggered the running of the statute of repose. See, *e.g.*, *Mauer*, 401 Ill. App. 3d at 639 (statute of repose begins to run as soon as the event creating the malpractice occurs). The statute of repose would have started running in October 2009, when Drinker failed to advise Carlson of the two-year statute of limitations. And the statute of repose expired six years later in October 2015.

¶ 93 Carlson's second engagement with Michael Best began in February 2014 and ended in May 2015, and by September 2015, Carlson had engaged new counsel. Therefore, even if Carlson's legal malpractice claims against Drinker did not accrue until the circuit court dismissed his legal malpractice claims against Collins in January 2014, his claims against Drinker, which did not expire under the statute of repose until October 2015, were still viable after Michael Best's representation ended in May 2015, and he retained new counsel in September 2015. As a result, Michael Best did not cause Carlson to lose any of his legal malpractice claims he may have had against Drinker.

¶ 94                 5. Arguments Raised in Motion for Reconsideration

¶ 95 Carlson raises two arguments on appeal that the circuit court declined to address in his motion for reconsideration. For reasons which will be discussed below, we believe the circuit court's decision was correct.

¶ 96 "The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the law." *Evanston Insurance*, 2014 IL 114271, ¶ 36. Generally, new legal arguments raised for the first time in a motion to reconsider are deemed forfeited. See, *e.g.*, *American Chartered Bank v. USMDS, Inc.*, 2013 IL App (3d) 120397, ¶ 13 ("Issues cannot be raised for the first time in the trial court in a motion to reconsider and issues raised for the first time in a motion to reconsider cannot be raised on appeal."); *Sewickley, LLC v. Chicago Title Land Trust Co.*, 2012 IL App (1st) 112977, ¶ 36 (same). However, there is authority supporting the proposition that a circuit court has the discretion to consider a new issue raised for the first time in a motion to reconsider when a party has a reasonable explanation for why he or she did not raise the issue earlier in the proceedings. *Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 195 (1989); *In re Marriage of Epting*, 2012 IL App (1st) 113727, ¶ 41.

¶ 97 Here, Carlson has not provided a reasonable explanation for why he did not raise his arguments earlier in the proceedings. Therefore, he has forfeited them for review. Forfeiture aside, we find the circuit court did not abuse its discretion in declining to address the two arguments Carlson set forth in his motion to reconsider.

¶ 98                         a. Double Hearsay

¶ 99 Carlson argues that his e-mail recounting his June 2008 conversation with his accountant, John Flaherty, in which Flaherty told him that he left $12 million on the negotiating table, is inadmissible hearsay that did not fall under any exception to the hearsay rule. Hearsay is a

statement, other than a statement made by a declarant while testifying at trial or hearing, offered into evidence to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015); *Prodromos v. Everen Securities, Inc.*, 341 Ill. App. 3d 718, 728 (2003) ("Hearsay is an out-of-court statement offered to prove the truth of the matter asserted ***.").

¶ 100    Carlson's e-mail recounting his conversation with Flaherty presents a potential double hearsay issue since it involves two out-of-court statements. Double hearsay is "[a] hearsay statement that contains further hearsay statements within it, none of which is admissible unless exceptions to the rule against hearsay can be applied to each level." Black's Law Dictionary (11th ed. 2019); see also *People v. McCullough*, 2015 IL App (2d) 121364, ¶ 113 (multiple hearsay is not admissible unless each layer of hearsay is excused by its own exception). However, an out-of-court statement offered into evidence for some purpose other than to prove the truth of the matter asserted is not hearsay. *People v. Kliner*, 185 Ill. 2d 81, 150 (1998). Therefore, there is no double hearsay where each statement is nonhearsay. Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015) (statement is not hearsay if it is offered against a party and is the party's own statement).

¶ 101    Here, neither the statement by Flaherty nor the statement by Carlson were hearsay, as neither of the statements was offered for their truth. Rather, the statements were offered to establish that Carlson was put on inquiry notice that there were problems with the proposed settlement agreement. " 'A statement that is offered to prove that a listener had notice of the of the information contained therein, rather than to prove the truth of the matter asserted, is not hearsay.' " *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 351 (2010) (quoting *People v. Shoultz*, 289 Ill. App. 3d 392, 395-96 (1997)).

¶ 102                   b. Reconsideration Based on Newly Discovered Evidence

¶ 103    Carlson finally argues that he presented the circuit court with newly discovered evidence in the form of a certification from Flaherty attesting that the June 2008 conversation never occurred. "When a movant seeks reconsideration based on newly discovered evidence, 'a party must show that the newly discovered evidence existed before the initial hearing but had not yet been discovered or was otherwise unobtainable.' " *Simmons v. Reichardt*, 406 Ill. App. 3d 317, 324 (2010) (quoting *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1141 (2004)). The statements made by Flaherty in his certification do not qualify as newly discovered evidence for purposes of Carlson's motion for reconsideration. Carlson, as a party to his conversation with Flaherty, identified the conversation as having occurred in June 2008, as noted in his e-mail. Carlson had been aware of the conversation since June 2008. Carlson cannot now argue that the circuit court erred by refusing to consider this to be newly discovered evidence, where Carlson was a party to the conversation he now claims did not occur.

¶ 104    Carlson asserts that the circuit court's discovery stay prevented him from obtaining Flaherty's statement sooner. The record does not support this assertion. Carlson never requested leave to depose Flaherty. Instead, Carlson waited until June 12, 2019, after he filed his motion to reconsider, to send a document subpoena to Flaherty.

¶ 105                        III. CONCLUSION

¶ 106    The circuit court did not abuse its discretion in denying Carlson's motion for leave to file a second amended legal malpractice complaint where the proposed amendments concerned allegations of malpractice that were time-barred by the applicable period of repose and Carlson

failed to establish the first *Loyola* factor showing that the allegations would cure defects in the prior pleadings. The circuit court did not abuse its discretion in denying Carlson's motion to conduct additional discovery where he failed to support the motion with a Rule 191(b) affidavit.

¶ 107    Moreover, we conclude that the circuit court properly granted summary judgment in favor of Michael Best on count I of the amended complaint for legal malpractice where there was no genuine issue of material fact as to damages arising out of the legal representation Michael Best provided him in connection with the settlement agreement. Specifically, we find that there is no genuine issue of material fact as to whether Michael Best caused Carlson to lose any potential legal malpractice claims against Collins because any potential claims Carlson had against Collins were already time-barred by the applicable statute of limitations before Carlson engaged Michael Best in August 2010. In addition, we find that there is no genuine issue of material fact as to whether Michael Best caused Carlson to lose any potential legal malpractice claims against Drinker because any potential claims Carlson had against Drinker were still viable when Carlson engaged successor counsel in November 2010. Furthermore, Carlson cannot sue Michael Best for failing to inform him of a claim against Michael Best because there is no duty for a law firm to inform a client that he or she has a claim against it.

¶ 108    Finally, we conclude that the circuit court did not abuse its discretion in declining to address the arguments Carlson raised in his motion for reconsideration, as they were not only waived but without merit. The statement that Carlson contends was hearsay was not in fact hearsay because it was not offered for the truth of the matter asserted. The alleged newly discovered evidence was not, in fact, newly discovered.

¶ 109    Affirmed.